## WALLER, Adm'r de bonis non, *vs.* RAY, FARLEY et al.

[APPEAL FROM DECREE OF PROBATE COURT ON FINAL SETTLEMENT OF ACCOUNTS OF ADMINISTRATOR DE BONIS NON, &C.]

1. *Administrator; what settlement by, final and not liable to collateral impeachment.*—When an executor or administrator resigns, and makes the settlement required by section 2232 of Revised Code, such settlement is to be regarded as the final settlement of the out-going executor or administrator, and it can not be collaterally impeached, in the subsequent administration of the estate.

2. *Same; duty of probate court in such settlement.*—On such settlement, it is the duty of the court to examine and audit the account of the out-going executor or administrator, and to require him to produce satisfactory evidence of the correctness of each item on the credit side of the account, whether exceptions be or be not filed to the same.

3. *Same; who are proper parties on such settlement.*—The parties to such a settlement are the heirs-at-law of the deceased, and the legatees or distributees, as the case may be, the administrator *de bonis non* of the testator or intestate, and, if the estate has been declared insolvent, the creditors are also proper parties.

4. *Administrator de bonis non; when not chargeable with items improperly allowed, &c., on final settlement of administrator in chief.*—Where the administrator *de bonis non* appears on such settlement, and examines the accounts, and, without filing exceptions, consents that the same may be allowed, this is not sufficient, on any subsequent settlement, to charge him with negligence, unless it clearly appears that said account, or items in it, were improper and should have been disallowed, and that he omitted to file exceptions from motives of bad faith.

5. *Executor; when entitled to compensation outside of commissions on receipts and disbursements.*—Where the will requires the widow, as executrix, to keep the estate 'together, and "to work it," as though the testator were alive, she is entitled to reasonable compensation for doing so, independent of commissions for receipts and disbursements. Although such compensation may not, strictly speaking, be a preferred claim, yet it is to be paid before the ordinary debts of the testator, in case of insolvency.

6. *Exceptions to accounts of administrator of insolvent estate; when must be filed, &c.*—Where the administrator of an insolvent estate files his accounts for a distribution among the creditors, no exceptions can then be made that might have been made at any previous settlement, or when the estate was declared insolvent.

7. *Revised Code, section 2706 of; to what cases does not apply.*—Where an executrix was authorized by the will of the testator "to work the place" as

if the testator were alive, and invested with a large discretion as to the management and conduct of the estate, she will not be liable, notwithstanding section 2706 of the Revised Code, to account for rent of lands for which she took no other security than the note of the lessees, who were then reputed solvent, but afterwards became insolvent, whereby she failed to collect the rent.

Appeal from the Probate Court of Montgomery.
Tried before Hon. George Ely.

The facts are sufficiently stated in the opinion.

Watts & Troy, for appellant.
Stone, Clopton & Clanton, Elmore & Gunter, Martin & Sayre, and Fitzpatrick & Williamson, contra.

PECK, C. J.—On the 31st day of January, 1864, William H. Rives, late of Montgomery county, made and published his last will and testament, by which he appointed his wife, Sarah J. Rives, executrix, and his friends, James Porter and Thomas H. Watts, executors, and shortly thereafter departed this life.

The said Porter and Watts declining to act as executors, Mrs. Rives, on the 7th day of March of said year 1864, had the said will proved in the probate court of said county, and qualified as sole executrix of the same. She gave no bond and security as executrix, the said will directing that none should be required.

The testator, at the time of his death, was possessed of a large estate, estimated to be worth over $200,000, consisting of two large plantations and ninety-odd thousand dollars worth of negro slaves, and other personal property, then usually owned by such persons, and in addition to his other business, was extensively engaged in the manufacturing of salt, in Clark county, in partnership with a Mr. Figh.

The said will directed his estate to be kept together and worked, as though he were alive; that his wife and four infant children should live together as one family, and be supported and maintained out of the proceeds of his property, so long as his wife remained a widow, and that the

children should be under her guardianship, and properly educated, and the expenses paid out of his estate.

The will gave the executrix and executors, or such of them as should qualify, full power to sell, at their discretion, any of his property at private or public sale, whenever they should think necessary, and to sell and buy without any order of any court, for the benefit of his estate or children; and enjoined upon them not to demand specie from any of his debtors, but to receive current funds, the common currency of the country.

Mrs. Rives, as executrix, continued to administer said estate, under the will, until the early part of the year 1867, when she resigned, and on the 4th day of March of said year, filed her accounts and vouchers in the probate court of said county for a final settlement.

After the resignation of Mrs. Rives as aforesaid, appellant was appointed administrator *de bonis non*, with the will annexed. On the 13th day of April, 1867, said settlement was made, the decree of the court showing that due notice had been given, and that John H. Campbell had been appointed guardian *ad litem* for the infant heirs-at-law of testator, and appeared in open court and proceeded to contest said settlement; the decree also showing, that appellant appeared and examined said accounts and vouchers, and consented that they might be passed and allowed.

The decree then states, that the court proceeded to hear all objections to said accounts, and to consider the evidence upon all matters touching the correctness and legality of said accounts, and, thereupon, rendered a final decree, by which said accounts so filed were allowed. One of the items on the credit side of said accounts was the sum of $3,650 allowed to said executrix as commissions. The court also decreed that said executrix recover of appellant as administrator *de bonis non*, &c., the sum of $6,722 03, the balance found to be due to her on said settlement, by said estate, "*on account of her administration.*"

The record shows that after this settlement, to-wit, on the — day of ——, 1867, said appellant, as administrator *de bonis non*, &c., reported said estate insolvent, and that the

same was duly declared insolvent by a decree of said probate court, and that afterwards he made a settlement of his administration, and the creditors failing to elect an administrator, said appellant was continued in office, as administrator in insolvency.

The record further shows, that after said estate was declared insolvent, to-wit, on the 31st of December, 1869, appellant, as administrator, &c., as aforesaid, paid to Mrs. Rives the said sum of $6,722 03, so decreed to her as aforesaid. After this, to-wit, on the 20th day of July, 1870, the claims filed against said estate by the creditors were, at the instance of the creditors and of said appellant, audited and allowed by said probate court, among which was the said sum of $6,722 03, decreed to Mrs. Rives. After this, the record shows that appellant filed his accounts for a settlement and partial distribution, &c., among the creditors, whose claims had been audited and allowed; that due notice having been given to the creditors, the said settlement was had on the 6th day of October, 1870.

On this settlement, the appellees, William C. Ray, James A. Farley, and Abram Martin, and others, creditors, who had filed claims against said estate, appeared and filed exceptions to appellant's accounts, &c. These exceptions are based, mainly, upon the alleged negligence and failure of appellant, as administrator *de bonis non, &c.*, to use due diligence in having a proper settlement made by Mrs. Rives as executrix, &c., by reason whereof, as stated, improper credits were allowed to her on said settlement, to the prejudice and injury of said estate, for which he was sought to be charged, &c.

On the hearing of said exceptions, after the evidence of both parties was closed, all of which is set out in appellant's bill of exceptions, the court by its decree struck out of appellant's account sundry items, amounting in the aggregate to the sum of $5,907 22, and charged him with the same. The court also charged him with another sum of $2,338 74, which, it is stated, was lost to said estate, by the alleged negligence of appellant on the settlement of said executrix, and also with the following sums, to-wit: $1,200,

the amount of what is called the note of Bulger, Bancroft & Co., which it was insisted the said executrix should have been charged with, but that appellant made no effort to have this done; $1,200, paid by executrix to W. W. Allen, and $1,900, paid by her to Lilly & Porter. The court also struck out, and disallowed altogether, the said sum of $6,722 03, decreed to executrix on her settlement, "on account of her administration."

To these several rulings, and to the decree of the court, appellant excepted, and appeals to this court to have the same reviewed.

A settlement made under section 2232 of the Revised Code, by an executor or administrator who has resigned, is, as to such executor or administrator, a final settlement, (Rev. Code, § 2165,) and is conclusive between the parties to such settlement, and can not be collaterally impeached in the subsequent administration of the estate.— *Griffin v. Griffin*, 40 Ala. 296; *Modawell v. Holmes, ib.* 391; *Slatter v. Glover*, 14 Ala. R. 648; *Watson v. Hutle*, 27 Ala. R. 513. Such executor or administrator must, within one month after his resignation, file his account and vouchers, &c., as in other cases of final settlement.—Revised Code, § 2232, *supra*. The parties to such settlement, where the estate has not been declared insolvent, are the heirs and legatees, or the heirs and distributees, as the case may be, and the administrator *de bonis non* of said testator or intestate.— Rev. Code, § 2166. If the estate has been declared insolvent, then, we think, the creditors should also be made parties, although there seems to be nothing in the Revised Code directing who are to be the parties in such a case.

When the accounts and vouchers are filed, the same notice must be given by the court as in other cases of final settlements.

On such settlement, it is the duty of the court to examine and audit the account, (Rev. Code, § 2143,) and on such auditing, the resigned executor or administrator must produce satisfactory evidence of the correctness of each item on the credit side of his account, and this, whether any objections be or be not made.—Rev. Code, § 2144.

Any person interested may appear and contest any item of the account, and may examine the executor or administrator, or any witness, in relation thereto.—Revised Code, § 2147. But I am not advised that there is any law that makes it the duty of the administrator *de bonis non* to supervise such settlement, or to make any objections to said account, or to any item contained in it. As we have seen, it is the duty of the court to require the executor or administrator to produce satisfactory evidence of its correctness. If the estate is settled as a solvent estate, the heirs and legatees or distributees are parties, and if of age, they can appear and protect their interests, or if infants, this duty devolves on their guardian *ad litem ;* but if the estate is insolvent, then the creditors should be made parties, and if they neglect to see to their own interests they can with no propriety charge the administrator *de bonis non* with negligence for failing to do it for them. The duty of the administrator *de bonis non* is to receive from the out-going executor or administrator, under the decree of the court, the unadministered assets of the estate, and to administer them according to law.

It is unnecessary to undertake to decide what might be the liabilities of an administrator *de bonis non*, if from motives of bad faith he should omit to overlook the settlement of an out-going administrator, and thereby injury should result to the parties interested, as the question does not arise in this case. There is no evidence in this record that, as it appears to us, tends to show bad faith in the matter of said settlement on the part of appellant. The only evidence on this subject is what appears in the decree of the court then made. It is there stated that the appellant, as administrator *de bonis non*, &c., appeared in open court and examined said accounts, and consented that the same might be passed and allowed. This statement, fairly interpreted, means that appellant examined said accounts, and discovering no ground for exceptions, consented that, as far as he was concerned, they might be allowed. In the absence of evidence to the contrary, it should be presumed this exam-

ination was honestly made, and that exceptions would have been filed if appellant had believed any good reasons existed for doing so.  But the decree of the court shows that said accounts were not allowed because no exceptions were filed by appellant; on the contrary, it appears the guardian *ad litem* of the minor heirs did contest said settlement; that evidence was introduced; that the court heard the objections and considered the evidence, and that the decree was based, not upon appellant's consent, but upon the correctness of said accounts, as shown by the evidence.  This disposes of the question of negligence, and substantially disposes of the whole case.

The settlement, thus made by the executrix, was a final settlement of her administration of said estate under said will, and the decree then rendered must be regarded, as to the parties before the court, as final and conclusive as to all matters then in issue; conclusive that her accounts were correct; that the commissions allowed her were properly allowed, and that the decree for $6,722 03 rendered in her favor, against the appellant, as administrator *de bonis non*, was the sum justly due her "*on account of her administration.*"  This decree must be presumed to have been rendered on sufficient evidence, and on any future settlement of the administrator *de bonis non* can not be collaterally impeached, either by him or by any other person, to his prejudice.

If it be conceded, that the appellees and creditors were not parties to said settlement, because the estate had not then been declared insolvent, and, therefore, should not be bound by said decree, they will gain nothing in this case by said concession; if not conclusive as to them, it must be held to be presumptively correct, even as to them, and if, when an opportunity was offered, they failed to make objection, they must be considered as admitting its correctness.  After said settlement was made, the record shows that appellant, as administrator *de bonis non*, reported said estate insolvent, and that afterwards, on the — day of —, 1867, said estate was duly declared insolvent by a decree of the court, and after said decree of insolvency, said ap-

pellant made a settlement as administrator *de bonis non.*
To each of these proceedings the appellees, as creditors,
were parties, and as they made no objection to the said
settlement of the executrix, Mrs. Rives, or to the decree
then rendered, or to the correctness of any of the items
contained in the accounts filed by her and allowed by the
court, common justice and equity require that, thereby, they
should be held to have waived the right to object to said
settlement and decree, in the future administration of said
estate as an insolvent estate. But I think the appellant
may safely go further, and rest the case on the presump-
tion in favor of the correctness of the said settlement of
the executrix, and on the evidence introduced on the hear-
ing of appellees' said exceptions. That evidence shows
that the items excepted to, consist of debts which the testa-
tor owed at the time of his death, and which had been paid
by executrix, two sums paid by executrix to agents em-
ployed by her in the management of said estate, $500 to
Chamberlain, and $2,000 to Porter, expenses paid for the
maintainance and education of testator's minor children;
the commissions allowed to executrix, the decree of $6,722
03 in her favor, and due to her "on account of her admin-
istration," and $1,200, the note of Bulger, Bancroft & Co.,
given to executrix for the rent of the Loftin plantation for
the year 1866, and payable on the 1st day of January,
1867,—all these items were allowed to executrix on her set-
tlement.

The presumption that these items were properly allowed,
is not destroyed, but rather confirmed, by the evidence be-
fore the court on the hearing of appellees' exceptions. The
estate, as settled by executrix, was settled as a solvent es-
tate, and, therefore, she was entitled to be credited with
the debts of testator paid by her. Such were the items
paid to Allen, and to Lilly and Porter. The witness Por-
ter proves the payment of the $500 to Chamberlain, and
the $2,000 to Porter, as agents of executrix, employed to
aid her in the management of said estate. He also proves
the necessity for their employment, and that the said sums
paid were reasonable. As to the $3,650 allowed to execu-

trix as commissions, it is only necessary to look at the accounts filed by her, to see that the sum does not exceed the commissions authorized by section 2116 of the Revised Code on receipts and disbursements. As to the sum of $6,722 03 allowed to executrix "on account of her administration," the witness Watts states that he was well acquainted with said estate; knew of what it consisted, and of the trouble and responsibility in keeping it together, and managing the same, from the death of testator to the resignation of executrix in April, 1867, and that he was well acquainted with the nature and value of the services required in keeping such an estate together, and attending to its business during said period, and that in his opinion from six to eight thousand dollars would have been reasonable compensation to executrix for her services and responsibility in keeping said estate together, and managing the same for said period. As the will required the executrix to keep said estate together and "*to work it,*" as though testator were alive, she was, as we think, clearly entitled to reasonable compensation for doing so, independent of ordinary commissions; and, considering the value of said estate, and the extensive and complicated character of the business of testator at the time of his death, which by the will executrix was directed to continue, and the additional trouble that must necessarily have fallen on her by the emancipation of the slaves, we are not prepared to say the sum allowed by said decree is unreasonable. This sum, although, perhaps, not strictly speaking a preferred claim, under section 2066 of the Revised Code, common equity requires its payment before the payment of the ordinary debts of testator, and for this reason we hold that said sum was properly paid by appellant, as administrator *de bonis non,* &c.

The note for $1,200 for the rent of the Loftin plantation was properly allowed as a credit to executrix on her settlement, and therefore could not, on the evidence, be charged to appellant in the subsequent settlement of his administration, either as administrator *de bonis non* or as administrator in insolvency. The said plantation was rented to the firm of Bulger, Bancroft & Co., and the three parties

Waller, Adm'r de bonis non, v. Ray, Farley et al.

composing said firm gave their note, as individuals, for the rent, and at the time were considered responsible for said sum. Although, by section 2076 of the Revised Code, executors and administrators are, ordinarily, only permitted to rent the lands of the deceased at public auction, securing the payment of the rent by notes or bonds, with two good and sufficient securities, &c., yet this section does not apply to executors, where the will gives them the power to act generally, in the management of the estate, as they may think best. The will, in this case, gave the executrix a very large discretion, and authorized her to buy and sell as she might think best, in her discretion, both the real and personal estate; and this power, we hold, reasonably interpreted, justified her in renting the lands the same way. And besides, there was no evidence tending to show negligence on the part of executrix in failing to collect said note. The evidence shows, that before said note fell due, before the end of the year, the makers abandoned, and left nothing out of which the note could be collected. The only remaining item to be considered is the moneys expended by executrix in the education and maintainance of testator's infant children.

The will expressly charged the executrix with the education and support of the children, and directed the expenses to be borne by the estate; therefore, the moneys expended by executrix for these purposes, not being shown to be unreasonable, were proper credits in her accounts. After a careful examination of the whole record, we are satisfied the appellees' exceptions should have been overruled.

The judgment is reversed, and the cause remanded for further proceedings, at the costs of appellees.